# Exhibit A

# TERM LOAN NOTE

**$18,050,000.00**                                                    Bethesda, Maryland
                                                                      February 5, 2016

FOR VALUE RECEIVED, each of **ASPEN VILLAGE AT LOST MOUNTAIN ASSISTED LIVING, LLC**, a Georgia limited liability company and **ASPEN VILLAGE AT LOST MOUNTAIN MEMORY CARE, LLC**, a Georgia limited liability company (individually, each a "Borrower" and collectively, "Borrowers"), hereby, jointly and severally, unconditionally promises to pay to the order of **MIDCAP FUNDING VI TRUST**, a Delaware statutory trust (together with its successors and assigns, "Lender") at the office of Agent (as defined herein) at c/o MidCap Financial Services, LLC, as Servicer, 7255 Woodmont Avenue, Suite 200, Bethesda, Maryland 20814, or at such other place as Agent may from time to time designate in writing, in lawful money of the United States of America and in immediately available funds, in the principal sum of **EIGHTEEN MILLION FIFTY THOUSAND AND NO/100 DOLLARS ($18,050,000.00)**, or such thereof as may be advanced from time to time to or for the account of Borrowers pursuant to the terms of that certain Credit and Security Agreement dated February 5, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), by and among Borrowers, such other borrowers that may become a "Borrower" under the Credit Agreement, various financial institutions as are, or may from time to time become, parties thereto as lenders (including without limitation, Lender) and **MIDCAP FINANCIAL TRUST**, a Delaware statutory trust, as agent (in such capacity and together with its successors and assigns, "Agent"). All capitalized terms used herein (which are not otherwise specifically defined herein) shall be used in this Term Loan Note (this "Note") as defined in the Credit Agreement.

1.      The outstanding principal balance of the Loan evidenced by this Note shall be payable in full on the Termination Date, or on such earlier date as provided for in the Credit Agreement.

2.      This Note is issued in accordance with the provisions of the Credit Agreement and is entitled to the benefits and security of the Credit Agreement and the other Financing Documents, and reference is hereby made to the Credit Agreement for a statement of the terms and conditions under which the Loan evidenced hereby was made and is required to be repaid.

3.      Each Borrower promises to pay interest from the date hereof until payment in full hereof on the unpaid principal balance of the Loan evidenced hereby at the per annum rate or rates set forth in the Credit Agreement. Interest on the unpaid principal balance of the Loan evidenced hereby shall be payable on the dates and in the manner set forth in the Credit Agreement. Interest as aforesaid shall be calculated in accordance with the terms of the Credit Agreement.

4.      Upon and after the occurrence of an Event of Default, and as provided in the Credit Agreement, the Loan evidenced by this Note may be declared, and immediately shall become, due and payable without demand, notice or legal process of any kind; *provided, however*, that upon the occurrence of an Event of Default pursuant to the provisions of Section 11.1(e) or Section 11.1(f) of the Credit Agreement, the Loan evidenced by this Note

shall automatically be due and payable, without demand, notice or acceleration of any kind whatsoever.

5.      Payments received in respect of the Loan shall be applied as provided in the Credit Agreement.

6.      Presentment, demand, protest and notice of presentment, demand, nonpayment and protest are each hereby waived by each Borrower.

7.      No waiver by Agent or any Lender of any one or more defaults by the undersigned in the performance of any of its obligations under this Note shall operate or be construed as a waiver of any future default or defaults, whether of a like or different nature, or as a waiver of any obligation of each Borrower to any other lender under the Credit Agreement.

8.      No provision of this Note may be amended, waived or otherwise modified unless such amendment, waiver or other modification is in writing and is signed or otherwise approved by Borrowers, the Required Lenders and any other Lender under the Credit Agreement to the extent required under <u>Section 13.16</u> of the Credit Agreement.

9.      **THIS NOTE SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MARYLAND WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES.**

10.     Whenever possible each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but in case any provision of or obligation under this Note shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

11.     Whenever in this Note reference is made to Agent, Lender or a Borrower, such reference shall be deemed to include, as applicable, a reference to their respective successors and assigns. The provisions of this Note shall be binding upon each Borrower and its successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

12.     In addition to and without limitation of any of the foregoing, this Note shall be deemed to be a Financing Document and shall otherwise be subject to all of general terms and conditions applicable to Financing Documents set forth in the Credit Agreement, *mutatis mutandis*.

*(Signatures to Appear on Following Page)*

2

*Signature Page to Term Loan Note*

IN WITNESS WHEREOF, intending to be legally bound, and intending that this Note constitute an agreement executed under seal, the undersigned have executed this Note under seal as of the day and year first hereinabove set forth.

**BORROWERS:**

**ASPEN VILLAGE AT LOST MOUNTAIN ASSISTED LIVING, LLC,**
a Georgia limited liability company

By: _____ (SEAL)
Name: _____
Its: _____

**ASPEN VILLAGE AT LOST MOUNTAIN MEMORY CARE, LLC,**
a Georgia limited liability company

By: _____ (SEAL)
Name: _____
Its: _____

# Exhibit A-1

## ALLONGE

As used in this Allonge, the following capitalized terms have the following meanings:

**"Term Loan Note"** means that certain Term Loan Note dated as of February 5, 2016 in the principal amount of $18,050,000, made by Maker and payable to the order of Initial Lender, as endorsed from Initial Lender to Previous Lender, and as further endorsed from Previous Lender to Current Lender.

**"Maker"** means, jointly, severally, and collectively, ASPEN VILLAGE AT LOST MOUNTAIN ASSISTED LIVING, LLC, a Georgia limited liability company and ASPEN VILLAGE AT LOST MOUNTAIN MEMORY CARE, LLC, a Georgia limited liability company.

**"Initial Lender"** means MidCap Funding VI Trust, a Delaware statutory trust.

**"Previous Lender"** means MidCap Funding VIII Trust, a Delaware statutory trust.

**"Current Lender"** means MidCap Financial Trust, a Delaware statutory trust.

This is an Allonge to the Term Loan Note defined above.  This Allonge is made without recourse, representation or warranty, express, implied or statutory, except as provided in that certain Assignment, Assumption and Acceptance Agreement of even date herewith between Current Lender and the endorsee named below.

Pay to the order of MIDCAP FUNDING XXXI, together with its successors and assigns.

**MIDCAP FINANCIAL TRUST,**
a Delaware statutory trust

By:    Apollo Capital Management, L.P.,
       its investment manager

By:    Apollo Capital Management GP, LLC,
       its general partner

By: _____
Name:   Maurice Amsellem
Title:    Authorized Signatory

Dated:  as of December 21, 2017

# Exhibit B

Deed        Doc: SD
**Filed 02/08/2016 11:57AM**
Georgia Intangible Tax Paid: $0.00
Treva W. Shelton
Clerk Superior Court, Paulding County, Ga.
Bk 03497    Pg  0043-0068

*This instrument was prepared by*
*and when recorded, return to:*

SPACE ABOVE THIS LINE FOR RECORDER'S USE.

Thomas E. Schnur, Esq. (CWM)
Vedder Price P.C.
222 North LaSalle Street, Ste. 2400
Chicago, IL  60601-1003

Maturity Date: February 5, 2020 subject to a one (1) year extension

Intangible Tax Due:  This Security Deed provides additional collateral for a loan to Grantor and Aspen Village at Lost Mountain Assisted Living, LLC; the entire intangibles tax of $25,000.00 was paid with the recording of a security deed from Aspen Village at Lost Mountain Assisted Living, LLC to Grantee dated of even date herewith.

THIS INSTRUMENT IS TO BE FILED FOR RECORD IN THE REAL ESTATE RECORDS OF THE COUNTY WHERE THE REAL PROPERTY IS LOCATED AND SHALL CONSTITUTE A FIXTURE FILING IN ACCORDANCE WITH THE PROVISIONS OF O.C.G.A. SECTION 11-9-502(C).

THIS INSTRUMENT SECURES FUTURE ADVANCES OR OBLIGATIONS PURSUANT TO CODE SECTION 44-14-2 OF THE O.C.G.A.  THIS INSTRUMENT SECURES DEBT WHICH INCLUDES FUTURE ADVANCES BY THE GRANTEE TO THE GRANTOR.

### DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

**THIS DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING** (this "**Security Document**" or "**Deed to Secure Debt**") is made as of this 5th day of February, 2016, by **ASPEN VILLAGE AT LOST MOUNTAIN MEMORY CARE, LLC**, a Georgia limited liability company, having an address of 135 Hillside Trace, Dallas, Georgia 30157, as grantor ("**Grantor**" or "**Borrower**") for

CHICAGO/#2799740.2

the benefit of **MIDCAP FINANCIAL TRUST**, a Delaware statutory trust, in its capacity as agent for Lenders (as defined below) (together with its successors and assigns **"Agent"** or **"Grantee"**), whose mailing address is c/o MidCap Financial Services, LLC, as servicer, 7255 Woodmont Avenue, Suite 200, Bethesda, Maryland 20814, for its benefit and the benefit of the Lenders (as defined herein).

## RECITALS:

A.     This Security Document is given to secure one or more loans (the **"Loan"**) in the maximum principal amount of **EIGHTEEN MILLION FIFTY THOUSAND AND NO/100 DOLLARS ($18,050,000.00)** advanced pursuant to that certain Credit and Security Agreement dated as of the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the **"Credit Agreement"**), among Grantor and certain of its affiliates, as borrowers, Agent, and the other financial institutions who are or hereafter become parties to the Credit Agreement (collectively or individually, as the context may require, referred to herein as **"Lenders"**); and evidenced by that certain Term Note, dated the date hereof, made by Borrower and certain of its affiliates in favor of Lenders (such Term Note, together with all extensions, renewals, replacements, restatements or modifications thereof being hereinafter referred to as the **"Note"**; together with the Credit Agreement, this Security Document, such other documents and instruments now or hereafter executed and delivered in connection with the Loan, and any and all amendments, renewals, extensions and replacements hereof and thereof, being sometimes referred to collectively as the **"Financing Documents"**).

B.     Grantor desires to secure the payment and performance of the Secured Obligations (as defined in Section 1.2 herein).

C.     This Security Document is given pursuant to the Credit Agreement, and payment, fulfillment, and performance by Borrower and its affiliates of obligations thereunder and under the other Financing Documents are secured hereby.

D.     Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Credit Agreement.

E.     The Recitals and Exhibits to this Security Document are hereby incorporated in this Security Document.

THIS SECURITY DOCUMENT IS GIVEN TO SECURE THE (i) payment of the Note, together with all interest, premiums and any other amounts, if any, due in accordance with the terms of the Note (including the Loan) and/or the Credit Agreement, as well as the payment of any additional indebtedness accruing to Agent or the Lenders on account of any future payments, advances or expenditures made by Agent or the Lenders pursuant to the Note, the Credit Agreement, this Security Document, or any other Loan Document or otherwise in connection with the Loan (all such payment obligations are hereinafter referred to as the **"Indebtedness"**) and (ii) the performance of all other obligations and covenants under the Financing Documents.

2

Bk 03497        Pg 0045

# ARTICLE ONE
## SECURITY

1.1.    <u>Granting Clause</u>.    To secure the payment and performance of the Secured Obligations incurred pursuant to the Financing Documents and the payment of all amounts due under and the performance and observance of all covenants and conditions contained in this Security Document, the Financing Documents, and any other documents and instruments now or hereafter executed by Grantor or any Credit Party (as defined in the Credit Agreement), to evidence, secure or guarantee the payment of all or any portion of the Secured Obligations, Grantor does hereby irrevocably and unconditionally grant, bargain, warrant, sell, convey, transfer and assign to Grantee WITH POWER OF SALE and right of entry and possession to Agent, for its benefit and the benefit of Lenders, all estate, right, title and interest that Grantor now has or may later acquire in and to the following property, subject to the terms and conditions herein:

(a)    The land commonly known as Aspen Village of Lost Mountain located in Dallas, Paulding County, Georgia, as legally described in attached <u>Exhibit A</u> ("**Land**");

(b)    All the buildings, structures, improvements and fixtures of every kind or nature now or hereafter situated on the Land and all of the Grantor's interests (now owned or hereafter acquired) in machinery, appliances, equipment, furniture and all other personal property of every kind or nature which constitute fixtures with respect to the Land, together with all extensions, additions, improvements, substitutions and replacements of the foregoing ("**Improvements**");

(c)    All easements, tenements, rights-of-way, vaults, gores of land, streets, ways, alleys, passages, sewer rights, water courses, water rights and powers and appurtenances in any way belonging, relating or appertaining to any of the Land or Improvements, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired ("**Appurtenances**");

(d)    Subject to the terms and provisions of the Credit Agreement: (i) all judgments, insurance proceeds, awards of damages and settlements which may result from any damage to all or any portion of the Land, Improvements or Appurtenances or any part thereof or to any rights appurtenant thereto; (ii) all compensation, awards, damages, claims, rights of action and proceeds of or on account of (a) any damage or taking, pursuant to the power of eminent domain, of the Land, Improvements or Appurtenances or any part thereof, (b) damage to all or any portion of the Land, Improvements or Appurtenances by reason of the taking, pursuant to the power of eminent domain, of all or any portion of the Land, Improvements, Appurtenances or of other property, or (c) the alteration of the grade of any street or highway on or about the Land, Improvements, Appurtenances or any part thereof; and, except as otherwise provided herein or in the Credit Agreement, Agent is hereby authorized to collect and receive said awards and proceeds and to give proper receipts and acquittances therefor and, except as otherwise provided herein or in the Credit Agreement, to apply the same toward the payment of the Secured Obligations; and (iii) all proceeds, products, replacements, additions, substitutions, renewals and accessions of and to the Land, Improvements or Appurtenances;

3

CHICAGO/#2799740.2

Bk 03497        Pg 0046

(e)    All rents, issues, profits, income and other benefits now or hereafter arising from or in respect of the Land, Improvements or Appurtenances (the "**Rents**"); it being intended that this <u>Section 1.1(e)</u> shall constitute an absolute and present assignment of the Rents, subject, however, to the license given to Grantor to collect and use the Rents as provided in this Security Document;

(f)    Any and all leases, licenses and other occupancy agreements now or hereafter affecting the Land, Improvements or Appurtenances, together with all security therefor and guaranties thereof and all monies payable thereunder, and all books and records owned by Grantor which contain evidence of payments made under the leases and all security given therefor (collectively, the "**Leases**"), subject, however, to the license given in this Security Document to Grantor to collect the Rents arising under the Leases as provided in this Security Document;

(g)    All of Grantor's right, title and interest, if any, in all goods, materials, supplies, work in process, chattels, furniture, fixtures, equipment, appliances, machinery and other personal property of any kind, now or later to be attached to, incorporated into, placed in, on or about, or used in connection with the use, enjoyment, occupancy or operation of all or any part of the Land and the Improvements, whether stored on the Land or elsewhere, including all elevator, kitchen, medical, dental or rehabilitation fixtures, cleaning apparatus, beds, linens, televisions, carpeting, telephones, cash registers, computers, lamps, glassware, rehabilitation equipment, restaurant and kitchen equipment, and medical, dental, therapeutic, paramedical, or rehabilitation equipments and supplies, pumping plants, engines, pipes, ditches and flumes, and also all gas, electric, cooking, heating, cooling, air conditioning, lighting, refrigeration and plumbing fixtures and equipment, all of which shall be considered to the fullest extent of the law to be real property, fixtures or personal property (as defined and governed by the Code (as hereinafter defined)) for purposes of this Security Document;

(h)    Any rights of Grantor arising from or held in connection with the ownership or operation of an assisted care facility or skilled nursing facility located on the Land, including, to the extent not prohibited or restricted under applicable law concerning residents of a nursing home or assisted living facility, any rights to payment for goods sold or leased or to be sold or leased or for services rendered or to be rendered;

(i)    All of Grantor's interest in and to all operating accounts relating to the Land, all funds on deposits in any escrow or reserve required under the Credit Agreement, and any other accounts held by Grantor or monies on deposit with or for the benefit of Lender, including (i) deposits for the payment of real estate taxes and insurance relating to the Land, (ii) tenant improvement and leasing commissions relating to the Land and (iii) any cash collateral account or bank accounts of Grantor relating to the Land;

(j)    To the extent assignable and related to the Land, all of Grantor's rights in or to management contracts, permits, licenses (including business licenses, state health department licenses, food service licenses, certificates of need and all such other permits, licenses and rights, obtained from any governmental, quasi governmental or private person or entity whatsoever concerning ownership, operation, use or occupancy of the Property), applications, approvals, plans, specifications and drawings, contracts, purchase and sale

4

CHICAGO/#2799740.2

Bk 03497    Pg 0047

agreements, purchase options, entitlements, soil test reports, other reports of examination or analysis of the Land or the Improvements, development rights and authorizations, however characterized with respect to any of the foregoing, issued or in any way furnished for the acquisition, construction, development, operation and use of the Land, Improvements and/or Leases, including building permits, environmental certificates, certificates of operation, warranties and guaranties;

(k)      To the extent related to the Land or Grantor's ownership and operation thereof, all of the following types of collateral arising from Grantor's ownership and operation of the Land, as defined in the Uniform Commercial Code as in effect from time to time in the State of Georgia (the "**Code**"): accounts, but only in the manner permitted by applicable law as to any government accounts, general intangibles, chattel paper, documents, instruments, inventory, goods, equipment, investment property, deposit accounts, letter(s) of credit (including all Collateral Letters of Credit, if any) and any rights associated therewith, commercial tort claims, health-care-insurance receivables and all books and records relating to the foregoing, provided that Grantor will cooperate with Lender in obtaining "control" as defined in the Code with respect to collateral consisting of deposit accounts, investment property, letter of credit rights and electronic chattel paper;

(l)      All books and records pertaining to any and all of the property described above, including computer-readable memory and any computer hardware or software necessary to access and process such memory ("**Books and Records**");

(m)      Any and all after-acquired right, title or interest of Grantor in and to any of the property described in the preceding subsections within this <u>Section 1.1</u>; and

(n)      The proceeds from the sale, transfer, pledge or other disposition of any or all of the property described in the preceding <u>Granting Clauses</u>;

All of the property described in this <u>Section 1.1</u> is hereinafter referred to as the "**Property**."

TO HAVE AND TO HOLD the same, with all rights, privileges and appurtenances thereunto belonging, to the said Grantee forever, in fee simple, subject only to matters contained in the mortgagee's title insurance policy delivered to Agent in connection with this transaction.

This Deed to Secure Debt is a deed and security agreement passing legal title pursuant to the laws of the State of Georgia governing loan or security deeds and security agreements and is not a mortgage, and is made to secure and enforce the payment and performance of the Secured Obligations. Should the Secured Obligations be paid in full, and should Grantor perform all covenants herein contained, then Grantee shall cause this Deed to Secure Debt to be cancelled of record.

1.2.      <u>Secured Obligations</u>.  Grantor makes the grant, conveyance, and mortgage set forth in <u>Section 1.1</u> hereof, and grant(s) the security interest set forth in <u>Section 2.18</u> below for the purpose of securing the following obligations (the "**Secured Obligations**") in any order of priority that Agent may choose:

5

BK 03497      Pg 0048

(i)      Payment and performance of the indebtedness and all other Obligations of Borrower and any other Credit Party (as defined in the Credit Agreement);

(ii)      Payment and performance of all future advances and other obligations that Borrower or any successor in ownership of all or part of the Property may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Agent, when a writing evidences the parties' agreement that the advance or obligation be secured by this Security Document;

(iii)      Payment of any and all loan commissions, interest, fees, charges, expenses, damages and advances due to or incurred by Agent regardless of whether any Loan proceeds have been disbursed and any advance(s) made by any Lender to protect its interest in any portion of the Property, which are advanced or otherwise required to be paid under the Credit Agreement, including but not limited to any commissions, interest, fees, charges, expenses, damages, advances and other amounts accruing or incurred during any bankruptcy proceeding whether or not such amounts are allowed or allowable in whole or in part in any such bankruptcy proceeding;

(iv)      *Payment and performance of all modifications, amendments, extensions, and renewals, however evidenced, of any of the Secured Obligations set forth above.*

1.3.    Future Advances.  This Security Document is given to secure not only the existing Secured Obligations, but also any Secured Obligations incurred on or after the date hereof, including but not limited to any future advances (whether such advances are obligatory or are made at the option of Agent, or otherwise) made by Agent and/or the Lenders pursuant to and under the Credit Agreement, the Note, any other Financing Document or this Security Document, to the same extent as if such future advances were made on the date of the execution of this Security Document.   Funds disbursed that, in the reasonable exercise of Agent's judgment, are needed to complete Improvements or to protect Agent's and Lenders' security interest in the Property, are to be deemed obligatory advances hereunder, and will be added to the Indebtedness and shall be part of the Secured Obligations secured by this Security Document, and the Indebtedness shall be increased accordingly. The total amount of Indebtedness secured hereby may increase or decrease from time to time.  This Security Document shall be valid and have priority to the extent of the maximum amount secured hereby over all subsequent liens and encumbrances, including statutory liens, excepting solely taxes and assessments levied on the Property given priority by law.

1.4.    Successors.

(a)      All persons who may have or acquire an interest in all or any part of the Property will be considered to have notice of, and will be bound by, the terms of the Financing Documents and each other agreement or instrument made or entered into in connection with each of the Financing Documents.  Such terms include any provisions in the Note or the Credit Agreement which permit borrowing, repayment and reborrowing, or which provide that the interest rate on one or more of the Secured Obligations may vary from time to time.

6

BK 03497    Pg 0049

## ARTICLE TWO
## COVENANTS OF GRANTOR

Grantor covenants and agrees with Agent and Lenders as follows:

2.1.    Performance under Credit Agreement, Security Document and Other Financing Documents.  Grantor shall perform, observe and comply with or cause to be performed, observed and complied with in a complete and timely manner all provisions hereof, of the Credit Agreement, every Loan Document and every instrument evidencing or securing the Secured Obligations.

2.2.    General Covenants and Representations.    Grantor covenants, represents and warrants that as of the date hereof and at all times thereafter during the term hereof:  (a) Grantor is seized of an indefeasible estate in fee simple in that portion of the Property which is real property, and has good and absolute title to it and the balance of the Property free and clear of all liens, security interests, charges and encumbrances whatsoever, except Permitted Liens under the Credit Agreement and those otherwise permitted in writing by Agent (such liens, security interests, charges and encumbrances being hereinafter referred to as the "**Permitted Liens**"); and (b) Grantor will maintain and preserve the lien and security title of this Security Document as a first and paramount lien and security title on the Property, subject only to the Permitted Liens until the Secured Obligations have been paid in full and Agent's obligations under the Credit Agreement have been terminated.

2.3.    Compliance with Laws and Other Restrictions.  Grantor covenants and represents that the Land and the Improvements and the use thereof presently comply with, and, to the extent required by the Credit Agreement, will continue to comply with, all applicable restrictive covenants, zoning and subdivision ordinances and building codes, licenses, health and environmental laws and regulations and all other applicable laws, ordinances, rules and regulations if the failure to so comply would have a Material Adverse Effect, provided that the Grantor may contest any acts, rules, regulations, orders and directions of such bodies or officials in any reasonable manner which Agent determines, in the exercise of its reasonable business judgment, will not materially and adversely effect Agent's or the Lenders' rights or priorities in the Property.

2.4.    Taxes and Other Charges.

(a)    Taxes and Assessments.  Grantor shall pay promptly when due all taxes, assessments, rates, dues, charges, fees, levies, fines, impositions, liabilities, obligations, liens and encumbrances of every kind and nature whatsoever now or hereafter imposed, levied or assessed upon or against the Property or any part thereof, or upon or against this Security Document or the Secured Obligations; provided, however, that Grantor may in good faith contest the validity, applicability or amount of any tax, assessment or other charge, if, on or before the due date of the asserted tax, assessment, or other charge, Grantor shall obtain an endorsement, in form and substance satisfactory to Agent, to the loan policy of title insurance issued to Agent insuring the lien and security title of this Security Document, insuring over such tax, assessment or other charge and if Grantor otherwise complies with any provisions which may be set forth in the Credit Agreement regarding the contest of taxes.

7

Bk 03497    Pg 0050

(b)    Taxes Affecting Agent's Interest. If any state, federal, municipal or other governmental law, order, rule or regulation, which becomes effective subsequent to the date hereof, in any manner changes or modifies existing laws governing the taxation of mortgages or debts secured by deeds to secure debt, or the manner of collecting taxes, so as to impose on Agent a tax by reason of its ownership of any or all of the Financing Documents or measured by the principal amount of the Secured Obligations, requires or has the practical effect of requiring Agent to pay any portion of the real estate taxes levied in respect of the Property or to pay any tax levied in whole or in part in substitution for real estate taxes or otherwise affects materially and adversely the rights of Agent or any Lender in respect of the Secured Obligations, this Security Document or the other Financing Documents, the Secured Obligations and all interest accrued thereon shall, upon thirty (30) days' notice, become due and payable forthwith at the option of Agent, whether or not there shall have occurred an Event of Default, provided, however, that, if Grantor may, without violating or causing a violation of such law, order, rule or regulation, pay such taxes or other sums as are necessary to eliminate such adverse effect upon the rights of Agent or any Lender and does pay such taxes or other sums when due, Agent may not elect to declare due the Secured Obligations by reason of the provisions of this Section 2.4(b).

2.5.    Construction and Other Liens.    Grantor shall not permit or suffer any construction, mechanic's, laborer's, materialman's, statutory or other lien or encumbrance (other than any lien for taxes and assessments not yet due) to be created upon or against the Property except Permitted Liens; provided, however, that Grantor may in good faith, by appropriate proceedings, contest the validity, applicability or amount of any asserted lien, if Grantor shall first obtain an endorsement, in form and substance satisfactory to Agent, to the loan policy of title insurance issued to Agent insuring the lien and security title of this Security Document, insuring over such asserted lien and if Grantor otherwise complies with any provisions which may be set forth in the Credit Agreement regarding the contest of liens.

2.6.    Insurance and Condemnation.

(a)    Insurance Policies. Grantor shall, at its sole expense, obtain for, deliver to, assign to and maintain for the benefit of Agent, until the Secured Obligations are paid in full, such policies of insurance as are required by the Credit Agreement.

(b)    Adjustment of Loss; Application of Proceeds. Except as otherwise may be provided by the Credit Agreement, Agent is hereby authorized and empowered, in its reasonable business judgment, to adjust or compromise any loss under any insurance policies covering the Property and to collect and receive the proceeds from any such policy or policies. Grantor hereby irrevocably appoints Agent as its attorney-in-fact for the purposes set forth in the preceding sentence. The entire amount of such proceeds, award or compensation shall be applied as provided in the Credit Agreement.

(c)    Condemnation Awards. Subject to the terms of the Credit Agreement, Agent, as agent for the Lenders, shall be entitled to all compensation, awards, damages, claims, rights of action and proceeds of, or on account of, (i) any damage or taking, pursuant to the power of eminent domain, of the Property or any part thereof, (ii) damage to the Property by reason of the taking, pursuant to the power of eminent domain, of other property, or (iii) the

8

CHICAGO/#2799740.2

BK 03497    Pg 0051

alteration of the grade of any street or highway on or about the Property, but in any case not in an amount in excess of the Secured Obligations.  Subject to the terms of the Credit Agreement, Agent is hereby authorized, at its option, to commence, appear in and prosecute in its own or Grantor's name any action or proceeding relating to any such compensation, awards, damages, claims, rights of action and proceeds and to settle or compromise any claim in connection therewith.  Grantor hereby irrevocably appoints Agent as its attorney-in-fact for the purposes set forth in the preceding sentence.  In the event that Grantor acquires any real estate to replace all or any portion of the Property which became subject to any such action or proceeding, Grantor shall execute and deliver to Agent a Security Document or mortgage of such replacement property, which instrument shall be in substantially the same form as this Security Document, and Grantor shall deliver to Agent a survey and a title insurance policy and such other items in connection with such replacement property as Agent may require, all in form and substance satisfactory to Agent.

(d)    Obligation to Repair.  If all or any part of the Property shall be damaged or destroyed by fire or other casualty or shall be damaged or taken through the exercise of the power of eminent domain or other cause described in Section 2.6(b), Grantor shall promptly and with all due diligence restore and repair, to the extent required by and in accordance with the Credit Agreement, the Property whether or not the proceeds, award or other compensation are made available to Grantor or are sufficient to pay the cost of such restoration or repair.

2.7.    Agent May Pay; Default Rate.  Upon Grantor's failure to pay any amount required to be paid by Grantor under any provision of this Security Document within the time period set forth in the Credit Agreement, Agent may pay the same.  Grantor shall pay to Agent immediately upon demand the amount so paid by Agent together with interest at a rate equal to the highest rate payable under the Credit Agreement after the occurrence of an "Event of Default" as such term is defined in the Credit Agreement (the **"Default Rate"**) and the amount so paid by Agent, together with interest, shall be added to the Secured Obligations.

2.8.    Care of the Property.  Grantor shall be responsible for preserving and maintaining the Property in good operating condition.  Grantor shall not, without the prior written consent of Agent, permit, commit or suffer any waste, impairment or deterioration of the Property or of any part thereof.

2.9.    Transfer or Encumbrance of the Property.  Except as permitted by Agent or by the Credit Agreement, Grantor shall not permit or suffer to occur any sale, assignment, conveyance, transfer, mortgage, lease or encumbrance of the Property, any part thereof, or any interest therein, without the prior written consent of Agent having been obtained.

2.10.    Further Assurances.  At any time and from time to time, upon Agent's request, Grantor shall make, execute and deliver, or cause to be made, executed and delivered, to Agent, and where appropriate shall cause to be recorded, registered or filed, and from time to time thereafter to be re-recorded, re-registered and refiled at such time and in such offices and places as shall be deemed desirable by Agent, any and all such further mortgages, deeds to secure debt, security agreements, financing statements, instruments of further assurance, certificates and other documents as Agent may consider reasonably necessary in order to effectuate or perfect, or to continue and preserve the Secured Obligations under, this Security Document.

9

CHICAGO/#2799740.2

BK 03497        Pg 0052

2.11.  <u>Assignment of Rents.</u>

(a)  As additional security for the payment of the Indebtedness and payment and performance of all Secured Obligations, Grantor hereby assigns to Agent, for its benefit and the benefit of the Lenders, all of Grantor's right, title and interest in and to the Leases, but without Agent thereby becoming liable for the performance of the lessor's obligations under the Leases.  The assignment of rents, income and other benefits contained in <u>Section 1.1</u> of this Security Document shall be absolute and effective immediately as of the date hereof, and fully operative without any further action on the part of either party.  Notwithstanding the foregoing, Grantor shall have a license to receive, collect and enjoy the Rents until the occurrence of an Event of Default hereunder.  Upon the occurrence and during the continuance of an Event of Default, the aforesaid license shall cease automatically, without notice, possession, foreclosure or any other act or procedure, the right of Grantor to receive, collect and enjoy the Rents shall belong exclusively to Agent, and all Rents assigned by this Security Document shall thereafter be paid directly to Agent.  Such rights and this assignment shall be operative during any period of redemption following foreclosure.  In the event of any sale or foreclosure which shall result in a deficiency, this assignment shall stand as security during the redemption period for the payment of such deficiency.  Grantor hereby further grants to Agent, for its benefit and for the benefit of the Lenders, the right effective upon the occurrence of an Event of Default, and so long as the Event of Default exists and during the pendency of any foreclosure proceedings and period of redemption to do any or all of the following, at Agent's option:  (i) enter upon and take possession of the Property either personally or through a receiver for the purpose of collecting the Rents; (ii) dispossess by the usual summary proceedings any tenant defaulting in the payment thereof to Agent; (iii) lease the Property or any part thereof; (iv) repair, restore and improve the Property; and (v) apply the Rents after payment of certain expenses and capital expenditures relating to the Property, on account of the Secured Obligations in such order and manner as Agent may elect.  Such assignment and grant shall continue in effect until the Secured Obligations are paid in full, the execution of this Security Document constituting and evidencing the irrevocable consent of Grantor to the entry upon and taking possession of the Property by Agent and to the appointment of a receiver if requested by Agent pursuant to such grant, whether or not foreclosure proceedings have been instituted.  Neither the exercise of any rights under this section by Agent nor the application of any such Rents to payment of the Secured Obligations shall cure or waive any Event of Default or notice provided for hereunder, or invalidate any act done pursuant hereto or pursuant to any such notice, but shall be cumulative of all other rights and remedies.  This assignment is given as collateral security only and shall not be construed as obligating Agent to perform any of the covenants or undertakings required to be performed by Grantor contained in the Leases.  No action taken by Agent hereunder shall make Agent a "mortgagee-in-possession" or obligate Agent to attempt to collect rent or other amounts from any tenant or to perform any obligations of landlord under any of the Leases.

(b)  Unless otherwise approved by Agent, Grantor shall not permit Rents under any of the Leases to be collected more than thirty (30) days in advance of the due date thereof and, upon any receiver, Agent, anyone claiming by, through or under

10

BK 03497      Pg 0053

Agent or any purchaser at a foreclosure sale coming into possession of the Property, no tenant shall be given credit for any rent paid more than thirty (30) days in advance of the due date thereof.

2.12.   **After-Acquired Property**.  To the extent permitted by, and subject to, applicable law, the lien of this Security Document shall automatically attach, without further act, to all property hereafter acquired by Grantor located in or on, or attached to, or used or intended to be used in connection with, or with the operation of, the Property or any part thereof.

2.13.   **Leases Affecting Property**.  Grantor shall comply with and perform in a complete and timely manner all of its obligations as landlord under the Leases.  The assignment contained in Sections 1.1(e) and 1.1(f) shall not be deemed to impose upon Agent any of the obligations or duties of the landlord or Grantor provided in any of the Leases.

2.14.   **Management of Property**.  Grantor shall cause the Property to be managed at all times in accordance with sound business practice.

2.15.   **Execution of Leases**.   Grantor shall not (a) enter into any non-residential Operating Leases (as defined in the Credit Agreement) or (b) modify, amend, or terminate any non-residential Operating Lease if the effect of such change or amendment would materially increase the obligations of Borrower or confer additional material rights on the third party lessee in a manner adverse to Borrower, Agent or the Lenders.

2.16.   **Expenses**.  In the event of foreclosure hereof, Agent shall be entitled to add to the Secured Obligations found to be due by the court a reasonable estimate of expenses to be incurred by or on behalf of Agent in connection therewith after entry of the decree of foreclosure.

2.17.   **Reserved**.

2.18.   **Security Agreement**.

(a)      This Security Document shall also constitute a Security Agreement, as that term is used in the Code, with respect to any portion of the Property which are now or hereafter deemed to be personal property, fixtures or property other than real estate and all replacements, additions and substitutions thereto (the "**UCC Collateral**").  Grantor hereby grants a security interest and assigns to Agent, for its benefit and the benefit of the Lenders in all of Grantor's right, title and interest in and to the UCC Collateral to secure the payment of the indebtedness secured by and the performance of the Secured Obligations.  Agent shall have, in addition to the rights and remedies granted to Agent under this Security Document, all of the rights and remedies of a secured party under the Code with respect to the UCC Collateral and Grantor hereby agrees that in the event Agent shall exercise any right or remedy under the Code following a default by Grantor under this Security Document, whether to dispose of the UCC Collateral or otherwise, ten (10) days notice by Agent to Grantor shall be deemed to be reasonable notice under any provision of the Code requiring such notice.  Grantor shall, immediately upon request by Agent, execute and deliver to Agent, in a form prescribed by Agent, any financing statement, continuation statement, certificate or other document covering all or any portion of the UCC Collateral designated by Agent that, in the opinion of Agent, may

11

Bk 03497    Pg 0054

be required to perfect, continue, affirm or otherwise maintain the existence and priority of the security interest in the UCC Collateral created under this Security Document. Grantor, if requested by Agent, shall also execute and deliver to Agent a Security Agreement covering the UCC Collateral and containing such covenants, conditions and agreements in addition or as a supplement to those contained in this Security Document as may be reasonably requested by Agent. Upon an Event of Default, Grantor shall gather all of the Property which is Improvements, at a location designated by Agent for sale pursuant to the terms hereof.

(b)    Agent shall have all the rights, remedies and recourses with respect to the Improvements, Leases and Rents afforded a secured party by the Code, now or hereafter in effect, in addition to, and not in limitation of, the other rights, remedies and recourses afforded by the Financing Documents and at law.

(c)    The assignment and security interest herein granted shall not be deemed or construed to constitute Agent as a trustee in possession of the Property, to obligate Agent to operate the Property or attempt to do the same, or take any action, incur expenses or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

2.19.    Fixture Filing. This Security Document shall be effective from the date of its recording as a financing statement filed as a "fixture filing", as that term is used in the Code, with respect to all goods constituting part of the Property which are or are to become fixtures. The mailing address of Grantor and the address of beneficiary from which information concerning the security interests may be obtained are set forth on the first page hereof. This Security Document shall be effective from the date of its recording as a financing statement filed as a "fixture filing", as that term is used in the Code, with respect to all goods constituting part of the Property which are or are to become fixtures. Grantor is the owner of the Land. The mailing address of Grantor and the address of beneficiary from which information concerning the security interests may be obtained are set forth in the first paragraph of this Deed to Secure Debt. Grantor is a limited liability company organized and existing under the laws of the state of Georgia and its organization (control) number is 14032786.

**ARTICLE THREE**
**DEFAULTS**

3.1.    Event of Default. The term **"Event of Default,"** wherever used in this Security Document, shall mean any one or more of the following events:

(a)    The failure by Grantor to keep, perform, or observe any covenant, condition or agreement on the part of Grantor in any of Section 2.4 and Section 2.6 of this Security Document.

(b)    The failure by Grantor to keep, perform or observe any covenant, condition or agreement on the part of Grantor in this Security Document, other than as set forth in clause (a) above, which failure continues for more than thirty (30) days after the earlier of the date on which Grantor knew of such failure or the date that Grantor received notice from Agent of such failure; provided, however, in the case of a default of a covenant, condition or agreement which is capable of cure but cannot reasonably be

12

BK 03497    Pg 0055

cured within such thirty (30) day period, and provided Grantor shall have given Agent a written undertaking to, and shall have commenced to cure such default within such thirty (30) day period and thereafter diligently and expeditiously proceeds to cure the same, such thirty (30) day period shall be extended for an additional thirty (30) days; and provided further that if a different notice or grace period is specified under Section 11.1 of the Credit Agreement (or elsewhere in this Security Document or the Credit Agreement) after which such particular breach will become an Event of Default, the specific provision elsewhere in this Security Document or in the Credit Agreement shall control.

(c)    The occurrence of an "Event of Default" under and as defined in the Credit Agreement or event of default under any of the other Financing Documents.

(d)    The failure by Grantor to keep, perform or observe any covenant, condition or agreement on the part of Grantor within any applicable notice and cure period in connection with that certain Environmental Indemnity Agreement of even date herewith made by any Credit Party (as defined in the Credit Agreement) in favor of Agent and Lenders.

## ARTICLE FOUR
## REMEDIES

4.1.    Acceleration of Maturity.  If an Event of Default shall have occurred, Agent may declare the Indebtedness and Secured Obligations to be immediately due and payable, without further demand or notice.

4.2.    Agent's Power of Enforcement.

(a)    If an Event of Default shall have occurred, Agent may, either with or without entry or taking possession as provided in this Security Document or otherwise, and without regard to whether or not the Secured Obligations shall have been accelerated, and without prejudice to the right of Agent thereafter to bring an action of foreclosure or any other action for any Event of Default existing at the time such earlier action was commenced or arising thereafter, proceed by any appropriate action or proceeding:  (i) to enforce the payment or performance of the Secured Obligations;  (ii) to foreclose this Security Document through judicial proceedings or by advertisement and to have sold either as a whole or in parcels, as Agent shall elect, the Property; and (iii) to pursue any other remedy available to it.  Agent may take action either by such proceedings or by the exercise of its powers with respect to entry or taking possession, or both, as Agent may determine.  Grantor agrees that Agent may elect to foreclose and select any redemption period authorized by law.

(b)    Upon the occurrence of an Event of Default, in accordance with applicable law, Agent shall have the option and is hereby authorized and empowered to enforce this Security Document and to commence foreclosure proceedings against the Property through judicial proceedings or by advertisement, pursuant to the statutes in such case made and provided, and to sell the Property or to cause the same to be sold at

13

Bk 03497    Pg 0056

public sale, and to convey the same to the purchaser, in accordance with said statutes in a single parcel or in several parcels. The commencement of foreclosure proceedings by Agent shall be deemed an exercise of its option to accelerate the Secured Obligations, unless the proceedings on its face specifically indicates otherwise. It is intended hereby to give Agent the widest possible discretion permitted by law with respect to all aspects of any such sale or sales. The sale or sales by Agent of less than the whole of the Property shall not exhaust the power of sale herein granted, and Agent is specifically empowered to make successive sale or sales under such power until the whole of the Property shall be sold; and if the proceeds of such sale or sales of less than the whole of the Property shall be less than the aggregate of the Secured Obligations and the expenses thereof, this Security Document and the lien, security interest and assignment hereof shall remain in full force and effect as to the unsold portion of the Property just as though no sale or sales had been made; provided, however, that Grantor shall never have any right to require the sale or sales of less than the whole of the Property, but Agent shall have the right, at its sole election, to sell less than the whole of the Property. If sale is made because of a default in the payment of a portion of the Secured Obligations, such sale may be made subject to the unmatured part of the Secured Obligations; and it is agreed that such sale, if so made, shall not in any manner affect the unmatured part of the Secured Obligations, but as to such unmatured part, this Security Document shall remain in full force and effect as though no sale had been made hereunder without exhausting the right of sale for any unmatured part of the Secured Obligations. At any such sale (i) Grantor hereby agrees, on its behalf and on behalf of its heirs, executors, administrators, successors, personal representatives and assigns, that any and all recitals made in any deed of conveyance given by Agent with respect to the identity of Agent, the occurrence or existence of any Event of Default, the acceleration of the maturity of the Secured Obligations, the request to sell, the notice of sale, the giving of notice to all debtors legally entitled thereto, the time, place, terms, and manner of sale, and receipt, distribution and application of the money realized therefrom, or the due and proper appointment of a substitute agent, and, without being limited by the foregoing, with respect to any other act or thing having been duly done by Agent or by Agent hereunder, shall be taken by all courts of law and equity as prima facie evidence that the statements or recitals state facts and are without further question to be so accepted, and Grantor hereby ratifies and confirms every act that Agent may lawfully do in the premises by virtue hereof; (ii) the purchaser may disaffirm any easement granted, or rental, lease or other contract made, in violation of any provision of this Security Document, and may take immediate possession of the Property free from, and despite the terms of, such grant of easement and rental or lease contract; and, (iii) Agent may bid and become the purchaser of all or any part of the Property at any foreclosure sale hereunder. Subject to applicable law, power is hereby granted to Agent, if default is made in the payment of the Secured Obligations or any part thereof, or in the payment of any other sums provided for herein, or in the performance of any covenants or condition of the Secured Obligations or as provided herein, in each case after the expiration of any applicable grace or cure period, to grant, bargain, sell, release and convey the Property at public auction or venue, and on such sale to execute and deliver to the purchaser or purchasers, his, her, its or their heirs, successors and assigns, good ample and sufficient deed or deeds of conveyance in

14

BK 03497    Pg 0057

law, pursuant to the statute in such case made and provided, and to apply the proceeds of such sale in the manner hereafter provided.

(c)    Upon foreclosure sale of the Property or any part thereof, the proceeds of such sale shall be applied in the following order:

(i)    to the payment of all costs of the suit or foreclosure, including reasonable attorneys' fees and the costs of title searches and abstracts;

(ii)    then, to the payment of all other expenses of Agent, including all monies expended by Agent and all other amounts payable by Grantor to Agent hereunder, with interest thereon;

(iii)    then, to the payment of the Secured Obligations; and

(iv)    then, to the payment of the surplus, if any, to Grantor or to whomsoever shall be entitled thereto.

(d)    Upon any foreclosure sale of the Property, as same may be sold either as a whole or in parcels, as Agent may elect, and if in parcels, the same be divided as Agent may elect, and at the election of Agent may be offered first in parcels and then as a whole, that offer producing the highest price for the entire Property to prevail, any law, statutory or otherwise, to the contrary notwithstanding, and Grantor hereby waives the right to require any such sale to be made in a single or separate parcel or the right to select such parcels.    Grantor hereby expressly waives any right pertaining to the marshalling of assets, the exemption of homestead, the administration of estates of decedents, or other matter to defeat, reduce or affect the right of Agent to sell the Property for the collection of the Secured Obligations (without any prior or different resort for collection), or the right of Agent to the payment of the Secured Obligations out of the proceeds of sale of the Property in preference to every other person and claimant.

(e)    WAIVER OF DEFENSES; JURY TRIAL; FORUM; VENUE. MORTGAGOR, ON BEHALF OF ITSELF AND ANY GUARANTORS OF ANY OF THE OBLIGATIONS, TO THE EXTENT PERMITTED BY LAW, WAIVES EVERY PRESENT AND FUTURE DEFENSE, CAUSE OF ACTION, COUNTERCLAIM, (OTHER THAN ANY COMPULSORY COUNTERCLAIM) OR SETOFF WHICH MORTGAGOR MAY NOW HAVE OR HEREAFTER MAY HAVE TO ANY ACTION BY AGENT IN ENFORCING THIS SECURITY DOCUMENT EXCEPT ARISING FROM AGENT'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT AS FINALLY DETERMINED BY A COURT OF COMPETENT JURISDICTION.    TO THE EXTENT PERMITTED BY APPLICABLE LAW, MORTGAGOR WAIVES ANY IMPLIED COVENANT OF GOOD FAITH AND RATIFIES AND CONFIRMS WHATEVER AGENT MAY DO PURSUANT TO THE TERMS OF THIS SECURITY DOCUMENT.    THIS PROVISION IS A MATERIAL INDUCEMENT FOR AGENT AND LENDERS GRANTING ANY FINANCIAL ACCOMMODATION TO

15

Bk 03497    Pg 0058

MORTGAGOR.  AGENT AND MORTGAGOR, AFTER CONSULTING OR HAVING
HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, EACH KNOWINGLY,
VOLUNTARILY AND INTENTIONALLY WAIVE IRREVOCABLY, THE RIGHT
TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING BASED
HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS
SECURITY DOCUMENT, THE NOTE OR ANY OF THE OTHER OBLIGATIONS,
THE  COLLATERAL,  OR  ANY  OTHER  AGREEMENT  EXECUTED  OR
CONTEMPLATED TO BE EXECUTED IN CONJUNCTION WITH THIS SECURITY
DOCUMENT, OR ANY COURSE OF CONDUCT OR COURSE OF DEALING IN
WHICH  AGENT  AND  MORTGAGOR  ARE  ADVERSE  PARTIES.    THIS
PROVISION IS A MATERIAL INDUCEMENT FOR AGENT AND LENDERS
GRANTING ANY FINANCIAL ACCOMMODATION TO MORTGAGOR.   TO
INDUCE  AGENT  AND  LENDERS  TO  MAKE  THE  LOANS,  MORTGAGOR
IRREVOCABLY AGREES THAT ALL ACTIONS ARISING, DIRECTLY OR
INDIRECTLY, AS A RESULT OR CONSEQUENCE OF THIS SECURITY
DOCUMENT, THE NOTE, ANY OTHER AGREEMENT WITH AGENT AND
LENDERS OR THE COLLATERAL, SHALL BE INSTITUTED AND LITIGATED
ONLY IN COURTS HAVING THEIR SITUS IN MONTGOMERY COUNTY, STATE
OF MARYLAND, EXCEPT TO THE EXTENT NECESSARY TO FORECLOSE OR
ENFORCE THE PROVISIONS OF THIS SECURITY DOCUMENT. MORTGAGOR
HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION AND VENUE OF
ANY STATE OR FEDERAL COURT HAVING ITS SITUS IN SAID COUNTY, AND
WAIVES  ANY  OBJECTION  BASED  ON  FORUM  NON  CONVENIENS.
MORTGAGOR HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL
PROCESS AND CONSENTS THAT ALL SUCH SERVICE OF PROCESS MAY BE
MADE BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO
MORTGAGOR AS SET FORTH HEREIN IN THE MANNER PROVIDED BY
APPLICABLE STATUTE, LAW, RULE OF COURT OR OTHERWISE.

4.3.    <u>Agent's Right to Enter and Take Possession, Operate and Apply Income</u>.

(a)    If an Event of Default shall have occurred, and is continuing,
(i) Grantor, upon demand of Agent, shall forthwith surrender to Agent the actual
possession of the Property, and to the extent permitted by law, Agent itself, or by such
officers or agents as it may appoint, is hereby expressly authorized to enter and take
possession of all or any portion of the Property and may exclude Grantor and the agents
and employees of Grantor wholly therefrom and shall have joint access with Grantor to
the books, papers and accounts of Grantor; and (ii) notwithstanding the provisions of any
of the Leases or other agreements to the contrary, Grantor shall pay monthly in advance
to Agent, on Agent's entry into possession, or to any receiver appointed to collect the
Rents, the fair and reasonable rental value for the use and occupation of such part of the
Property as may be in possession of Grantor, or any entity affiliated with or controlled by
Grantor, and upon default in any such payment Grantor shall vacate and surrender
possession of such part of the Property to Agent or to such receiver, and in default thereof
Grantor may be evicted by summary proceedings or otherwise.

16

Bk 03497    Pg 0059

(b)    If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after Agent's demand, Agent may obtain a judgment or decree conferring on Agent the right to immediate possession or requiring Grantor to deliver immediate possession of all or part of the Property to Agent, to the entry of which judgment or decree Grantor hereby specifically consents. Grantor shall pay to Agent, upon demand, all costs and expenses of obtaining such judgment or decree and reasonable compensation to Agent, its attorneys and agents, and all such costs, expenses and compensation shall, until paid, be secured by the lien of this Security Document.

(c)    Upon every such entering upon or taking of possession, Agent, to the extent permitted by law, may hold, store, use, operate, manage and control the Property and conduct the business thereof.

4.4.    Leases.    If Agent so elects, Agent is authorized to foreclose this Security Document prior to or subject to the rights, if any, of any or all tenants of the Property.

4.5.    Purchase by Agent.    Upon any foreclosure sale, Agent or any Lender may bid for and purchase all or any portion of the Property.

4.6.    Application of Secured Obligations Toward Purchase Price.    Upon any foreclosure sale, Agent may apply any or all of the Secured Obligations and other sums due under the Credit Agreement, the Note, this Security Document or any other Financing Documents to the price paid by Agent at the foreclosure sale.

4.7.    Waiver of Appraisement, Valuation, Stay and Extension Laws.    In case of an Event of Default, neither Grantor nor anyone claiming through or under it will set up, claim or seek to take advantage of any reinstatement, appraisement, valuation, stay or extension laws now or hereafter in force, or take any other action which would prevent or hinder the enforcement or foreclosure of this Security Document or the absolute sale of the Property or the final and absolute putting into possession thereof, immediately after the expiration of the redemption period. Grantor, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprising the Property marshalled upon any foreclosure of the lien hereof and agrees that Agent or any court having jurisdiction to foreclose such lien may sell the Property in part or as an entirety. Further, Grantor waives any right otherwise available to require Agent to pursue its remedies against any other assets or any other person or entity who or which may be liable for any of the Secured Obligations.

4.8.    Receiver – Agent in Possession.    If an Event of Default shall have occurred, Agent, to the extent permitted by law and without regard to the value of the Property or the adequacy of the security for the Secured Obligations and other sums secured hereby, shall be entitled as a matter of right and without any additional showing or proof, at Agent's election, to either the appointment by the court of a receiver (without the necessity of Agent posting a bond) to enter upon and take possession of the Property and to collect all rents, income and other benefits thereof and apply the same as the court may direct or to be placed by the court into possession of the Property as mortgagee in possession with the same power herein granted to a receiver and with all other rights and privileges of a mortgagee in possession under law.

17

BK 03497    Pg 0060

4.9.    <u>Grantor to Pay the Secured Obligations in Event of Default</u>.  Upon occurrence of an Event of Default, Agent shall be entitled to sue for and to recover judgment against Grantor for the Secured Obligations due and unpaid together with costs and expenses, including the reasonable compensation, expenses and disbursements of Agent's agents, attorneys and other representatives, either before or during the pendency of any proceedings for the enforcement of this Security Document; and the right of Agent to recover such judgment shall not be affected by any taking of possession or foreclosure sale hereunder, or by the exercise of any other right, power or remedy for the enforcement of the terms of this Security Document, or the foreclosure of the lien hereof.

4.10.    <u>Remedies Cumulative</u>.  No right, power or remedy conferred upon or reserved to Agent by the Credit Agreement, this Security Document or any other Loan Document or any instrument evidencing or securing the Secured Obligations is exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Credit Agreement or any other Loan Document or any instrument evidencing or securing the Secured Obligations, or now or hereafter existing at law, in equity or by statute.

## ARTICLE FIVE
## MISCELLANEOUS PROVISIONS

5.1.    <u>Heirs, Successors and Assigns Included in Parties</u>.  Whenever Grantor or Agent is named or referred to herein, heirs and successors and assigns of such person or entity shall be included, and all covenants and agreements contained in this Security Document shall bind the successors and assigns of Grantor, including any subsequent owner of all or any part of the Property and inure to the benefit of the successors and assigns of Agent.

5.2.    <u>Notices</u>.  All notices, requests, reports, demands or other instruments required or contemplated to be given or furnished under this Security Document to Grantor or Agent shall be directed to Grantor or Agent, as the case may be, in the manner and at the addresses for notice set forth in the Credit Agreement.

5.3.    <u>Headings</u>.  The headings of the articles, sections, paragraphs and subdivisions of this Security Document are for convenience only, are not to be considered a part hereof, and shall not limit, expand or otherwise affect any of the terms hereof.

5.4.    <u>Invalid Provisions</u>.  In the event that any of the covenants, agreements, terms or provisions contained in this Security Document shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein (or the application of the covenant, agreement, term held to be invalid, illegal or unenforceable, to persons or circumstances other than those in respect of which it is invalid, illegal or unenforceable) shall be in no way affected, prejudiced or disturbed thereby.

5.5.    <u>Changes</u>.  Neither this Security Document nor any term hereof may be released, changed, waived, modified, amended, extended, discharged or terminated orally, or by any action or inaction, but only by an instrument in writing signed by the party against which enforcement of the release, change, waiver, discharge or termination is sought.

18

BK 03497        Pg 0061

5.6.    Governing Law.  This Security Document shall be governed by and in accordance with the internal laws of the State of Georgia.

5.7.    Limitation of Interest.    The provisions of the Credit Agreement regarding the payment of lawful interest are hereby incorporated herein by reference.

5.8.    Last Dollar.  The lien of this Security Document shall remain in effect until the last dollar of the Secured Obligations is paid in full and all of Grantor's obligations under the Credit Agreement have been terminated.

5.9.    Release.  In accordance with the terms and conditions of the Credit Agreement and upon full payment and satisfaction of the Secured Obligations and the termination of all Grantor's obligations under the Credit Agreement, Agent shall issue to Grantor an appropriate release or satisfaction in recordable form.

5.10.    Time of the Essence.    Time is of the essence with respect to this Security Document and all the provisions hereof.

5.11.    Credit Agreement.  The Loan is governed by terms and provisions set forth in the Credit Agreement and in the event of any conflict between the terms of this Security Document and the terms of the Credit Agreement, the terms of the Credit Agreement shall control.

5.12.    Excess Interest.  If it is determined that Grantor shall have paid or there shall have accrued interest on the indebtedness secured by this Security Document in an amount in excess of that permitted by law, such excess shall, to the extent required by law and otherwise at the option of Agent, either be applied to reduce the unpaid indebtedness secured by this Security Document or be refunded to Grantor.

5.13.    Number and Gender.    Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

5.14.    Entire Agreement.  This Security Document and the other Financing Documents contain the entire agreement of the parties hereto and thereto in respect of the transactions contemplated hereby and thereby, and all prior agreements among or between such parties, whether oral or written between Grantor and Agent are superseded by the terms of this Security Document and the other Financing Documents.

5.15.    Limitation on Agent's Responsibility.  No provision of this Security Document shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Agent, nor shall it operate to make Agent responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Agent a "mortgagee in possession."

19

CHICAGO/#2799740.2

Bk 03497      Pg 0062

5.16.   Joint and Several Liability.  If Borrower consists of more than one person, each shall be jointly and severally liable for the faithful performance of all of Borrower's obligations under this Security Document and the other Financing Documents.

5.17.   Merger.  No merger shall occur as a result of Agent or Lender's acquiring any other estate in or any other lien on the Property unless Agent or Lender consents to a merger in writing.

## ARTICLE SIX
## STATE SPECIFIC PROVISIONS

6.1.   Principles of Construction.  In the event of any inconsistencies between the terms and conditions of this ARTICLE SIX and the terms and conditions of this Security Document, the terms and conditions of this ARTICLE SIX shall control and be binding.

6.2.   NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN CONTAINED:   (I) THIS SECURITY DOCUMENT SHALL BE DEEMED TO BE AND SHALL BE ENFORCEABLE AS (A) A DEED PASSING TITLE TO THE GRANTEE IN THE PORTION OF THE PROPERTY LOCATED IN THE STATE OF GEORGIA, MADE UNDER THOSE PROVISIONS OF THE EXISTING LAWS OF THE STATE OF GEORGIA RELATING TO DEEDS TO SECURE DEBT, AND NOT AS A MORTGAGE, AND GIVEN TO SECURE THE INDEBTEDNESS AND (B) AN ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT GIVEN TO SECURE THE INDEBTEDNESS, AND (II) THE AGGREGATE PRINCIPAL AMOUNT OF THE INDEBTEDNESS SECURED HEREBY SHALL NOT EXCEED THE AMOUNT SET FORTH ON THE FACE OF THE NOTE AT ANY TIME PLUS (1) INTEREST AND FEES, (2) THE AMOUNT OF ADDITIONAL ADVANCES MADE BY THE GRANTEE TO PROTECT AND PRESERVE THE PREMISES OR THE SECURITY TITLE AND INTEREST CREATED HEREBY, TO PAY TAXES AND INSURANCE PREMIUMS AND TO REPAIR, MAINTAIN AND COMPLETE IMPROVEMENTS ON THE PREMISES AND (3) ALL EXPENSES INCIDENT TO COLLECTION.

6.3.   Power of Sale.  Upon the occurrence and during the continuance of an Event of Default, the Grantee, at its option, may sell the Property or any part of the Property at one or more public sale or sales prepared for and conducted in accordance with applicable Georgia law, including, without limitation, a public sale before the door of the courthouse of the county in which the Property or any part of the Property is situated, to the highest bidder for cash, in order to pay the Indebtedness secured hereby, and all expenses of sale and all proceedings in connection therewith, including attorneys' fees actually incurred, after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county.  At any such public sale, the Grantee may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple with full warranties of title, and to this end the Grantor hereby grants, constitutes and appoints the Grantee, the agent and attorney-in-fact of the Grantor to make such sale and conveyance, and thereby to divest the Grantor of all right, title and interest that the Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said

20

CHICAGO/#2799740.2

BK 03497    Pg 0063

agent and attorney-in-fact are hereby ratified and confirmed in any recitals and such conveyance or conveyances as to facts essential to avail such sale shall be binding upon the Grantor. The Grantor further hereby constitutes and appoints the Grantee the agent and attorney-in-fact of the Grantor to make such recitals, and hereby covenants and agrees that the recitals so to be made by the Grantee shall be binding and conclusive upon the Grantor, and that the conveyance to be made by the Grantee shall be effectual to bar all equity of redemption of the Grantor in and to the Property. The aforesaid powers of attorney, power of sale and agency hereby granted together with the power of attorney granted herein are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided hereby or by law for collection of the indebtedness secured hereby. In the event of any sale under this Deed to Secure Debt by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels in such manner or order as the Grantee in its sole discretion may elect, and if the Grantee so elects, the Grantee may sell the personal property covered by this Deed to Secure Debt at one or more separate sales in any manner permitted by the Code, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until the entire Property is sold or the Loan and other amounts due under the Credit Agreement are paid in full. If the Loan and all other obligations of the Grantor under the Credit Agreement are now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other Security Documents, the Grantee may at its option exhaust the remedies granted under any of said Security Documents either concurrently or independently, and in such order as the Grantee may determine.

6.4.    Additional Proceedings.    If an Event of Default exists, the Grantee may, in addition to and not in abrogation of the rights contained herein, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Deed to Secure Debt or any other right and (ii) to pursue any other remedy available to it, all as the Grantee at its sole discretion shall elect.

6.5.    Fixtures.    With respect to the fixtures in which a security interest is herein granted, at the Grantee's option and in its sole discretion, the Grantee may exercise any or all of the rights accruing to a secured party under this Deed to Secure Debt, the Code and any other applicable law.

6.6.    Purchase by the Grantee.    Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, the Grantee may bid for and purchase the Property and shall be entitled to apply all or any part of the obligations as a credit to the purchase price.

6.7.    Waiver of Appraisement, Valuation, Etc.    Upon the occurrence of an Event of Default hereunder and at all times thereafter during the continuance of such Event of Default, the Grantor, on behalf of itself, its successors, receivers, trustees and assigns, and for any and all persons ever claiming any interest in the Property, hereby waives and releases all rights of valuation, appraisement, and all rights to a marshaling of the assets of the Grantor (including without limitation all rights under O.C.G.A. Section 44-14-85), whether such rights could

21

BK 03497      Pg 0064

(absent the waiver herein contained) be exercised in connection with the foreclosure of this Deed to Secure Debt, the absolute sale of the Property, the delivery of possession thereof immediately after such sale to the purchaser at such sale, or otherwise.

6.8.    Discontinuance of Proceedings.  In case the Grantee shall have proceeded to enforce any right, power or remedy under this Deed to Secure Debt by foreclosure, entry or otherwise or in the event the Grantee commences advertising of the intended exercise of the sale under power provided hereunder, and such proceeding of advertisement shall have been withdrawn, discontinued or abandoned for any reason, or shall have been determined adversely to the Grantee, then in every such case (i) the Grantor and the Grantee shall be restored to their former positions and rights, (ii) all rights, powers and remedies of the Grantee shall continue as if no such proceeding had been taken, (iii) each and every Event of Default declared or occurring prior or subsequent to such withdrawal, discontinuance or abandonment shall and shall be deemed to be a continuing Event of Default, and (iv) neither this Deed to Secure Debt, nor the Note, nor the secured obligations, nor any other instrument concerned therewith, shall be or shall be deemed to have been reinstated or otherwise affected by such withdrawal, discontinuance or abandonment; and the Grantor hereby expressly waives the benefit of any statute or rule of law now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the above.

6.9.    Reserved.

6.10.    Reasonable Attorney's Fees.  Anything to the contrary in this Deed to Secure Debt, any obligation of any Grantor to pay attorney fees shall be limited to reasonable fees actually incurred, and such obligation, if any, shall not be determined as a percentage of any amounts due under the Note or Notes or the Loan evidenced thereby.

6.11.    Maturity Date.  It is the intention of Grantor and Grantee that this Deed to Secure Debt shall establish for the benefit of Grantee a perpetual or indefinite security interest in the Property to secure the Secured Obligations as provided by O.C.G.A. Section 44-14-80(a)(1).

6.12.    Construction Mortgage.  This Deed to Secure Debt is a "construction mortgage" for purposes of O.C.G.A. Sections 11-9-334 and 11-2A-309.

6.13.    Waiver of Notice for Immediate Writ of Possession.  Grantor hereby acknowledges that the Secured Obligations arise out of a "commercial transaction" as that term is defined in the O.C.G.A. Sec. 44-14-260 (1) concerning foreclosure of mortgages on personalty, and agrees that if a default has occurred and is continuing, Grantee shall have the right to an immediate writ of possession without notice of hearing, and Grantor hereby knowingly and intelligently waives any and all rights it may have to any notice and posting of a bond prior to seizure by Grantee, its transferees, assigns or successors in interest of the Property or any portion thereof.  The foregoing is intended by Grantor as a "waiver" as that term is defined in the O.C.G.A. Sec 44-14-260 (3) relating to foreclosure of liens on personalty.

**[NO FURTHER TEXT ON THIS PAGE]**

22

Bk 03497    Pg 0065

BY EXECUTION OF THIS DEED TO SECURE DEBT, GRANTOR EXPRESSLY: ACKNOWLEDGES THE RIGHT OT ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND THE POWER GIVEN HEREIN TO GRANTEE TO SELL THE PROPERTY BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE NOTE OR PROVISIONS OF THIS DEED TO SECURE DEBT OR BY LAW; ACKNOWLEDGES THAT THE UNDERSIGNED HAS READ THIS DEED AND THAT ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF THIS DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR. GRANTOR HAS CONSULTED WITH ITS COUNSEL PRIOR TO EXECUTING THIS DEED AND ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY THE UNDERSIGNED, ON BEHALF OF GRANTOR, AS PART OF A BARGAINED-FOR LOAN TRANSACTION AND THAT THIS DEED IS VALID AND ENFORCEABLE BY GRANTEE AGAINST GRANTOR IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.

**Remainder of page left blank.**

CHICAGO/#2799740.2

BK 03497        Pg 0066

**(Signature Page to Deed to Secure Debt-Memory Care Parcel)**

      **IN WITNESS WHEREOF,** this Security Document has been executed by Borrower as of the day and year first above written.

**GRANTOR**

                            **ASPEN VILLAGE AT LOST MOUNTAIN MEMORY CARE, LLC, a Georgia limited liability company**

                            By: _____

                            Name: _____

                            Its: _____

Signed, sealed and delivered in the presence of:

**Unofficial Witness:**

_____
Print Name: _____

**Notary:**

Notary Public: _____
Print Name: _____
My Commission Expires: _____

[NOTARY SEAL]

BK 03497    Pg 0067

## EXHIBIT A

### Legal Description

All that tract or parcel of land lying and being located in Land Lot 147 of the 19th District, 2nd

Section, Paulding County, Georgia, and being more particularly described as follows:

**COMMENCING** at the an iron pin found (#4 rebar) at the common corner of land lots 75, 76,

147, and 148, said corner also being the northeast corner of land lot 147;  thence S66°26'28"E, a

distance of 1,112.39 feet to an iron pin (#4 rebar), said iron pin being the **TRUE POINT OF**

**BEGINNING,** said iron pin being located 12.1 feet, more or less, south of the centerline of an

unnamed creek;  thence S00°03'10"E along the Walmart Real Estate Business Trust property for

a distance of 633.72 feet to an iron pin (#4 rebar) located on the northerly right of way of

Hillside Trace (right of way varies);  thence S89°58'21"W along said northerly right of way of

Hillside Trace for a distance of 271.32  feet to a an iron pin (#4 rebar); thence leaving said right

of way and running N01°34'19"E along the now or formerly Aspen Village at Lost Mountain

Senior Living Center, LLC property and along the westerly side of a 50 foot access easement for

Hillside Trace for a distance of 8.32 feet to a point; thence running N88°25'41"W and continuing

along the now or formerly Aspen Village at Lost Mountain Senior Living Center, LLC property

and along the northwesterly side of a 50 foot access easement for Hillside Trace for a distance of

27.44 feet to a point; thence running in a northwesterly direction along the northeasterly side of

an access easement for Hillside Trace and continuing along the now or formerly Aspen Village

at Lost Mountain Senior Living Center, LLC property and following the curvature thereof along

a curve to the right for an arc length of 207.78 feet (said arc having a radius of 218.00 feet and

being subtended by a chord of N61°07'26"W-200.00 feet) to a point; thence N33°49'10"W and

continuing along the now or formerly Aspen Village at Lost Mountain Senior Living Center,

LLC property for a distance of 116.09 feet to a point, said point being at the centerline of twin

A-1

CHICAGO/#2799740.2

Bk 03497    Pg 0068

54" corrugated metal pipes enclosing an unnamed creek; thence N58°49'12"E along the

centerline of said twin 54" corrugated metal pipes and continuing along the now or formerly

Aspen Village at Lost Mountain Senior Living Center, LLC property a distance of 41.58 feet to a

point located on the upstream headwall of said twin 54" corrugated metal pipes; thence

following the centerline of said unnamed creek and following the meanderings thereof for a

distance of 810 feet, more or less, to a point located in the centerline of said creek; thence

S00°03'10"E along the Walmart Real Estate Business Trust property for a distance of 12.1 feet,

more or less to an iron pin (#4 rebar), said iron pin being the **TRUE POINT OF BEGINNING.**

Said tract containing 213,148 square feet (4.89 acre), more or less.

Together with non-exclusive easement rights in the following:

a. Grant of Easement by and between Paulding Business Center, LLC, a Georgia limited liability company and Aspen Village at Lost Mountain Assisted Living, LLC, a Georgia limited liability company, dated August 17, 2010, filed August 27, 2010 and recorded in Deed Book 2827, Page 12, aforesaid records.

b. Grant of Easement by and between West Ridge Church, Inc., a Georgia corporation and Aspen Village at Lost  Mountain Assisted Living, LLC, a Georgia limited liability company, dated August 12, 2010, filed August 27, 2010 and recorded in Deed Book 2827, Page 18, aforesaid records.

c. Permanent Access and Drainage Easement from Paulding Business Center, LLC, a Georgia limited liability company to Aspen Village at Lost Mountain Assisted Living, LLC, a Georgia limited liability company, filed August 27, 2010 and recorded in Deed Book 2827, Page 23, aforesaid records.

d. Access Easement by and between Wal-Mart Stores East, LP and Stan Stephens Enterprises, LLC, dated November 29, 2005, filed December 5, 2005, and recorded at Deed Book 2038, Page 193, aforesaid records.

e. Reciprocal Access Easement and Temporary Construction Easement by and between Meridian Opportunity Fund II, LLC and Aspen Village at Lost Mountain Assisted Living, LLC, dated as of June 29, 2011, filed March 30, 2012, and recorded at Deed Book 2982, Page 256, aforesaid records.

A-2

# Exhibit B-1

Deed        Doc: SD
Filed 02/08/2016 11:57AM
Georgia Intangible Tax Paid: $0.00
Treva W. Shelton
Clerk Superior Court, Paulding County, Ga.
Bk 03497    Pg 0069-0078

*This instrument was prepared by*
*and when recorded, return to:*

SPACE ABOVE THIS LINE FOR RECORDER'S USE.

Thomas E. Schnur, Esq. (CWM)
Vedder Price P.C.
222 North LaSalle Street, Ste. 2400
Chicago, IL  60601-1003

## ASSIGNMENT OF LEASES AND RENTS

      **THIS ASSIGNMENT OF LEASES AND RENTS** (the "**Assignment**") dated as of February 5, 2016 is made by **ASPEN VILLAGE AT LOST MOUNTAIN MEMORY CARE, LLC**, a Georgia limited liability company, with an address at 135 Hillside Trace, Dallas, Georgia 30157 ("**Assignor**" or "**Borrower**"), in favor of **MIDCAP FINANCIAL TRUST**, a Delaware statutory trust, with an office located at c/o MidCap Financial Services, LLC, as servicer, 7255 Woodmont Avenue, Suite 200, Bethesda, Maryland 20814 (together with its successors and assigns, "**Agent**"), as agent for itself and certain other financial institutions from time to time party to the Credit Agreement referred to below (collectively, "**Lenders**" and each a "**Lender**"). Capitalized terms used herein and not specifically defined herein shall have the respective meanings ascribed to such terms in the Credit Agreement.

### RECITALS

      **A.**     Agent and Lenders have agreed to make one or more loans to Borrower and certain of its affiliates in the maximum principal amount of EIGHTEEN MILLION FIFTY THOUSAND AND NO/100 DOLLARS ($18,050,000.00) (the "**Loan**"), which Loan is evidenced by that certain Credit and Security Agreement, of even date herewith, by and among Agent, Lenders and Borrower and certain of its affiliates (as amended, substituted, restated or modified from time to time, "**Credit Agreement**") and that certain Term Note, dated the date

CHICAGO/#2799747.2

28

Bk 03497    Pg 0070

hereof, made by Borrower and certain of its affiliates in favor of Lender (such Term Note, together with all extensions, renewals, replacements, restatements or modifications thereof being hereinafter referred as the "**Note**"), and which Loan is secured by, among other things, that certain Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date herewith, encumbering, among other things, the property located in Dallas, Paulding County, Georgia, which is more particularly described on <u>Exhibit A</u> attached hereto and incorporated herein (as amended, substituted, restated or modified from time to time, the "**Security Document**").

**B.**    As a condition precedent to the Agent and Lenders extending any financial accommodation to Borrower and certain of its affiliates pursuant to the Notes or otherwise, Agent and Lenders have requested that Assignor execute and deliver this Assignment to Agent for its benefit and the benefit of Lenders, and that any loan or other financial accommodation made by Agent and Lenders to Borrower and certain of its affiliates, as the case may be, under the Credit Agreement or otherwise shall be in reliance upon this Assignment.

## GRANTING CLAUSE

In consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, Assignor does hereby assign, transfer and set over unto Agent, for its benefit and the benefit of the Lenders, all right, title and interest of the Assignor in, under or pursuant to any and all present and future leases or subleases, whether written or oral, or any lettings of possession of, or any agreements for the use or occupancy of, the whole or any part of the real estate and premises hereinafter described which the Assignor may have heretofore made or agreed to or may hereafter make or agree to, or which may be made or agreed to by the Agent under the powers hereinafter granted, including all amendments and supplements to and renewals thereof at any time made (collectively, the "**Leases**" and each is individually a "**Lease**"), relating to that certain real estate described in <u>Exhibit A</u> attached hereto and made a part hereof along with the improvements now or hereafter erected thereon ("**Premises**"), including, without limiting the generality of the foregoing, all right, title, and interest of Assignor in and to all the rents (whether fixed or contingent), earnings, renewal rents, and all other sums due or which may hereafter become due under or by virtue of the Leases and all rights under or against guarantors of the obligations of lessees and obligors under the Leases.

THIS ASSIGNMENT OF LEASES AND RENTS IS GIVEN TO SECURE:

(i) The payment in full of all principal of and interest on the Loan, (ii) the performance of all obligations, covenants, promises, and agreements contained herein and in the Security Document, the Credit Agreement, and the other Financing Documents, including the Obligations, (iii) the performance of all obligations, covenants, promises, and agreements of the Credit Parties (as defined in the Credit Agreement) contained in any loan or other agreements setting forth terms and conditions applicable to the Loan evidenced by the Credit Agreement or providing collateral security therefor, (iv) the payment of all expenses and charges, legal or otherwise, paid or incurred by Agent in realizing upon or protecting the indebtedness referred to in the foregoing clauses (i), (ii) and (iii) or any security therefor, including this Assignment (the Credit Agreement, the Security Document, the other Financing Documents and the other indebtedness, obligations, and liabilities referred to in clauses (i), (ii), (iii), and (iv) above being hereinafter collectively referred to as the "**Indebtedness**").

2

CHICAGO/#2799747.2

BK 03497    Pg 0071

AND ASSIGNOR HEREBY COVENANTS, AGREES, REPRESENTS AND WARRANTS AS FOLLOWS:

1.    Upon the occurrence of any Event of Default, the Assignor does hereby irrevocably constitute and appoint Agent the true and lawful attorney of the Assignor with full power of substitution for Assignor and in Assignor's name, place and stead to ask, demand, collect, receive, receipt for, sue for, compound, and give acquittance for any and all sums due or to become due under any Lease, with full power to settle, adjust, or compromise any claim thereunder as fully as the Assignor could do, and to endorse the name of the Assignor on all commercial paper given in payment or in part payment thereof, and in Agent's discretion to file any claim or take any other action or proceeding, either in Agent's name or in the name of the Assignor or otherwise, which Agent may deem necessary or appropriate to protect and preserve the right, title, and interest of Agent in and to such sums and the security intended to be afforded hereby.

2.    The Assignor warrants to Agent and the Lenders that the Assignor has good right to make this Assignment and that the rights, rents, and other sums due or which may hereafter become due and which are intended to be assigned hereunder are not presently alienated, assigned, or pledged to any other person or entity.

3.    This Assignment includes and establishes a present, absolute and primary transfer and assignment of all rents, earnings, income, issues and profits from the Leases, but so long as no Event of Default has occurred and is continuing under the terms as set forth in the Security Document, the Credit Agreement, or any other Financing Documents, the Assignor shall have the right and license to collect, use and enjoy all rents and other sums due or to become due by virtue of any Lease as they respectively become due, but not more than thirty (30) days in advance, without Agent's consent, which shall not be unreasonably withheld, conditioned or delayed.

4.    The Assignor hereby irrevocably consents to and authorizes and directs that the tenant or other obligor under any Lease upon demand and notice from Agent of Agent's right to receive rents and other sums hereunder, shall pay such rents and other sums to Agent after an Event of Default without any obligation on the part of such tenant or other obligor to determine the actual existence of any default or event claimed by Agent as the basis for Agent's right to receive such rents or other sums and notwithstanding any notice from or claim of the Assignor to the contrary. The Assignor hereby waives any right or claim against any tenant or other obligor for any such rents and other sums paid by tenant or other obligor to Agent.

5.    Without limiting any legal rights of Agent as the absolute assignee of the rents, issues and profits of the Leases and in furtherance thereof, Assignor agrees that after an Event of Default, whether before or after the Loan is declared due in accordance with its terms, the Agent may, at its option: (i) take actual possession of the Premises hereinabove described, or of any part thereof, personally or by agent or attorney, as for condition broken, and without force and with process of law, enter upon, take, and maintain possession of all or any part of said Premises, together with all documents, books, records, papers, and accounts relating thereto, and exclude the Assignor, its agents, or servants, therefrom and hold, operate, manage and control the Premises, and at the expense of the Assignor, from time to time, cause to be made all necessary or proper repairs, renewals, replacements, useful alterations, additions, betterments, and improvements to the Premises as may seem judicious, and pay taxes, assessments, and prior or

3

proper charges on the Premises, or any part thereof, and insure and reinsure the same, and lease the Premises in such parcels and for such times and on such terms as Agent may deem fit, including leases for terms expiring beyond the maturity of the indebtedness evidenced by said Credit Agreement, and cancel any lease or sublease for any cause or on any ground which would entitle the Assignor to cancel the same and in every such case have the right to manage and operate the said Premises and to carry on the business thereof as Agent shall deem proper; or (ii) with or without taking possession of the Premises, Agent may proceed to enforce the Leases and collect all sums due or to become due thereunder and by so doing, Agent shall not be deemed a mortgagee in possession nor to have assumed or become responsible or liable for any obligations of Assignor arising thereunder or in respect thereof.

6.      Any sums received by Agent under or by virtue of this Assignment shall be applied to the payment of or on account of the following in such order and manner as Agent may elect:

> (a)      to the payment of all proper charges and expenses, including the just and reasonable compensation for the services of Agent, its attorneys, agents, clerks, servants, and others employed in connection with the operation, management, and control of the Premises and the conduct of the business thereof;

> (b)      to the payment of any sum secured by a Lien or encumbrance upon the Premises;

> (c)      to the cost of completing any improvements being constructed on or about the Premises at the time of taking over the Leases; and

> (d)      to the reduction of the Indebtedness hereby secured, whether or not the same may then be due or be otherwise adequately secured.

The manner of application of such sums and the items which shall be credited or paid out of same shall be within the sole discretion of Agent and nothing contained herein shall obligate Agent to use any such sums for a purpose other than reducing the Indebtedness hereby secured unless it shall elect to do so. Agent shall be subrogated to any lien discharged out of the rents, income and profits of the Premises.

7.      Assignor hereby further covenants that the Assignor will, upon request of Agent, execute and deliver such further instruments and do and perform such other acts and things as Agent may reasonably deem necessary or appropriate to more effectively vest in and secure to Agent the rights and rents which are intended to be assigned to Agent hereunder. Assignor irrevocably waives any right it now or hereafter may have to offset any claim or liability owing from it to any obligor on a Lease against sums due or to become due from such obligor under a Lease.

8.      Except as provided for in the Credit Agreement, Assignor covenants and agrees to observe and perform all of the obligations imposed on it under the Leases and not to do or permit to be done anything to impair the security thereof, not to execute any Lease without the written consent of Agent, not to further assign or encumber its rights under the Leases or its rights to the rents or other sums due or to become due thereunder and not suffer or permit any of the Leases to be subordinated to any other liens or encumbrances whatsoever, any such subordination to be

4

null and void unless done with the written consent of Agent. Except as provided for in the Credit Agreement, Assignor further covenants and agrees not to amend, modify or terminate any of the Leases without the prior written consent of Agent.

9.    The acceptance by Agent of this Assignment, with all of the rights, powers, privileges and authority so created, shall not, prior to entry upon and taking of actual physical possession of the Premises by Agent, be deemed or construed to constitute Agent a mortgagee in possession nor impose any obligation whatsoever upon Agent, it being understood and agreed that Agent does not hereby undertake to perform or discharge any obligation or liability of the landlord under any Leases or under or by reason of this Assignment. Agent shall have no liability to Assignor or anyone for any action taken or omitted to be taken by it hereunder, except for its gross negligence and willful misconduct. Subject to the limitation imposed by the preceding sentence, should Agent incur any liability, loss, or damage under or by reason of this Assignment or for any action taken by Agent hereunder, or in defense against any claim or demand whatsoever which may be asserted against Agent arising out of any Lease, the amount thereof, including costs, expenses, and reasonable attorneys' fees, together with interest thereon at the rate applicable to the Loan at the time of incurrence (or if the Loan has been paid in full at the time of incurrence, then at the rate applicable to the Loan at the time of such payment in full), shall be secured by this Assignment and by the Security Document, and the Assignor shall reimburse the Assignee therefore immediately upon demand. Assignor's obligation to so pay shall survive payment of the indebtedness hereby secured and the release of this Assignment.

10.    The rights and remedies of Agent hereunder are cumulative and are not secondary to or in lieu of, but are in addition to any rights or remedies which Agent shall have under the Credit Agreement, the Security Document or any other instrument or document or under applicable law and the exercise by Agent of any rights and remedies herein contained shall not be deemed a waiver of any other rights or remedies of Agent, whether arising under the Security Document or otherwise, each and all of which may be exercised whenever Agent deems it in its interest to do so. The rights and remedies of Agent may be exercised from time to time and as often as such exercise is deemed expedient and the failure of Agent to enforce any of the terms, provisions and conditions of this Assignment for any period of time, at any time or times, shall not be construed or deemed to be a waiver of any rights under the terms hereof.

11.    The right of Agent to collect and receive the rents assigned hereunder or to exercise any of the rights or powers herein granted to Agent shall, to the extent not prohibited by law, extend also to the period from and after the filing of any suit to foreclose the lien of the Security Document, including any period allowed by law for the redemption of the Premises after any exercise by Agent of its power of sale.

12.    This Assignment shall be assignable by Agent and all of the terms and provisions hereof shall be binding upon and inure to the benefit of the respective legal representatives, successors, and assigns of each of the parties hereto. All provisions hereof are severable and if any provisions hereof shall be invalid or unenforceable, the validity and enforceability of the remaining provisions hereof shall in no way be affected thereby.

13.    <u>Governing Law</u>. This Assignment shall be governed by and in accordance with the internal laws of the State of Georgia.

5

CHICAGO/#2799747.2

14.    WAIVER OF DEFENSES; JURY TRIAL; FORUM; VENUE. ASSIGNOR, ON BEHALF OF ITSELF AND ANY GUARANTORS OF ANY OF THE OBLIGATIONS, WAIVES EVERY PRESENT AND FUTURE DEFENSE, CAUSE OF ACTION, COUNTERCLAIM OR SETOFF WHICH ASSIGNOR MAY NOW HAVE OR HEREAFTER MAY HAVE TO ANY ACTION BY AGENT IN ENFORCING THIS ASSIGNMENT. ASSIGNOR WAIVES ANY IMPLIED COVENANT OF GOOD FAITH AND RATIFIES AND CONFIRMS WHATEVER AGENT MAY DO PURSUANT TO THE TERMS OF THIS ASSIGNMENT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR AGENT AND LENDERS GRANTING ANY FINANCIAL ACCOMMODATION TO ASSIGNOR. AGENT AND ASSIGNOR, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES IRREVOCABLY, THE RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS ASSIGNMENT, THE NOTES OR ANY OF THE OTHER OBLIGATIONS, THE COLLATERAL, OR ANY OTHER AGREEMENT EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONJUNCTION WITH THIS ASSIGNMENT, OR ANY COURSE OF CONDUCT OR COURSE OF DEALING IN WHICH AGENT AND ASSIGNOR ARE ADVERSE PARTIES. THIS PROVISION IS A MATERIAL INDUCEMENT FOR AGENT AND LENDERS GRANTING ANY FINANCIAL ACCOMMODATION TO ASSIGNOR. TO INDUCE AGENT AND LENDERS TO MAKE THE LOANS, ASSIGNOR IRREVOCABLY AGREES THAT ALL ACTIONS ARISING, DIRECTLY OR INDIRECTLY, AS A RESULT OR CONSEQUENCE OF THIS ASSIGNMENT, THE COLLATERAL OR THE NOTES OR ANY OTHER AGREEMENT WITH AGENT AND LENDERS, SHALL BE INSTITUTED AND LITIGATED ONLY IN COURTS HAVING THEIR SITUS IN THE MONTGOMERY COUNTY, STATE OF MARYLAND, EXCEPT TO THE EXTENT NECESSARY TO FORECLOSE OR ENFORCE THE PROVISIONS OF THIS ASSIGNMENT. ASSIGNOR HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY STATE OR FEDERAL COURT HAVING ITS SITUS IN SAID COUNTY, AND WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS. ASSIGNOR HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND CONSENTS THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO ASSIGNOR AS SET FORTH HEREIN IN THE MANNER PROVIDED BY APPLICABLE STATUTE, LAW, RULE OF COURT OR OTHERWISE.


**[NO FURTHER TEXT ON THIS PAGE]**

6

BK 03497          Pg 0075

(Signature Page to Assignment of Leases and Rents-Memory Care Parcel)

**IN WITNESS WHEREOF,** the parties hereto have caused these presents to be signed by their duly authorized officials the day and year first above written.

ASSIGNOR:

**ASPEN VILLAGE AT LOST MOUNTAIN MEMORY CARE, LLC,** a Georgia limited liability company

By: _____

Name: _____

Its: _____

Signed, sealed and delivered in the presence of:

**Unofficial Witness:**

_____

Print Name: _Whitney Crowley_

**Notary:**

Notary Public _____

Print Name: _____

My Commission Expires: _6/2/2018_

[NOTARY SEAL]

CHICAGO/#2799747

Bk 03497    Pg 0076

**EXHIBIT A**

**LEGAL DESCRIPTION**

All that tract or parcel of land lying and being located in Land Lot 147 of the 19th District, 2nd

Section, Paulding County, Georgia, and being more particularly described as follows:

**COMMENCING** at the an iron pin found (#4 rebar) at the common corner of land lots 75, 76,

147, and 148, said corner also being the northeast corner of land lot 147; thence S66°26'28"E, a

distance of 1,112.39 feet to an iron pin (#4 rebar), said iron pin being the **TRUE POINT OF**

**BEGINNING,** said iron pin being located 12.1 feet, more or less, south of the centerline of an

unnamed creek; thence S00°03'10"E along the Walmart Real Estate Business Trust property for

a distance of 633.72 feet to an iron pin (#4 rebar) located on the northerly right of way of

Hillside Trace (right of way varies); thence S89°58'21"W along said northerly right of way of

Hillside Trace for a distance of 271.32 feet to a an iron pin (#4 rebar); thence leaving said right

of way and running N01°34'19"E along the now or formerly Aspen Village at Lost Mountain

Senior Living Center, LLC property and along the westerly side of a 50 foot access easement for

Hillside Trace for a distance of 8.32 feet to a point; thence running N88°25'41"W and continuing

along the now or formerly Aspen Village at Lost Mountain Senior Living Center, LLC property

and along the northwesterly side of a 50 foot access easement for Hillside Trace for a distance of

27.44 feet to a point; thence running in a northwesterly direction along the northeasterly side of

an access easement for Hillside Trace and continuing along the now or formerly Aspen Village

at Lost Mountain Senior Living Center, LLC property and following the curvature thereof along

a curve to the right for an arc length of 207.78 feet (said arc having a radius of 218.00 feet and

being subtended by a chord of N61°07'26"W-200.00 feet) to a point; thence N33°49'10"W and

A-1

CHICAGO/#2799747.2

Bk 03497    Pg 0077

continuing along the now or formerly Aspen Village at Lost Mountain Senior Living Center,

LLC property for a distance of 116.09 feet to a point, said point being at the centerline of twin

54" corrugated metal pipes enclosing an unnamed creek; thence N58°49'12"E along the

centerline of said twin 54" corrugated metal pipes and continuing along the now or formerly

Aspen Village at Lost Mountain Senior Living Center, LLC property a distance of 41.58 feet to a

point located on the upstream headwall of said twin 54" corrugated metal pipes; thence

following the centerline of said unnamed creek and following the meanderings thereof for a

distance of 810 feet, more or less, to a point located in the centerline of said creek; thence

S00°03'10"E along the Walmart Real Estate Business Trust property for a distance of 12.1 feet,

more or less to an iron pin (#4 rebar), said iron pin being the **TRUE POINT OF BEGINNING.**

Said tract containing 213,148 square feet (4.89 acre), more or less.

     Together with non-exclusive easement rights in the following:

a.    Grant of Easement by and between Paulding Business Center, LLC, a Georgia
limited liability company and Aspen Village at Lost Mountain Assisted Living,
LLC, a Georgia limited liability company, dated August 17, 2010, filed August
27, 2010 and recorded in Deed Book 2827, Page 12, aforesaid records.

b.    Grant of Easement by and between West Ridge Church, Inc., a Georgia
corporation and Aspen Village at Lost  Mountain Assisted Living, LLC, a
Georgia limited liability company, dated August 12, 2010, filed August 27, 2010
and recorded in Deed Book 2827, Page 18, aforesaid records.

c.    Permanent Access and Drainage Easement from Paulding Business Center, LLC,
a Georgia limited liability company to Aspen Village at Lost Mountain Assisted
Living, LLC, a Georgia limited liability company, filed August 27, 2010 and
recorded in Deed Book 2827, Page 23, aforesaid records.

d.    Access Easement by and between Wal-Mart Stores East, LP and Stan Stephens
Enterprises, LLC, dated November 29, 2005, filed December 5, 2005, and
recorded at Deed Book 2038, Page 193, aforesaid records.

e.    Reciprocal Access Easement and Temporary Construction Easement by and
between Meridian Opportunity Fund II, LLC and Aspen Village at Lost Mountain

A-2

CHICAGO/#2799747.2

BK 03497   Pg 0078

Assisted Living, LLC, dated as of June 29, 2011, filed March 30, 2012, and
recorded at Deed Book 2982, Page 256, aforesaid records.

A-3